Theodore Velsor, J.
This is an action to recover damages for personal injuries allegedly sustained by the plaintiff as a result of the negligence of the defendants, who have interposed a particular affirmative defense, among others, that the maintenance of the instant action is barred by the applicable provisions of section 19 of the Volunteer Firemen’s Benefit Law. (In the answer of defendant Fuller Boad Fire Department Inc. it is specified as the First Affirmative Defense, and in the answer of the defendants Hicksville Fire Department and Hicksville Fire District, it is denoted the Second Affirmative Defense.)
By stipulation between the attorneys for the respective parties, and pursuant to the directions of the Justice presiding at the Calendar Part, Trial Term, Part I, the issues raised by said affirmative defense were separately set down for determination before me without a jury. An agreed statement of facts, supplemented by the testimony of two witnesses, provides the factual basis for the requested determination, with the under *524 standing that any discrepancy between the statement and the testimony shall be resolved in favor of the agreed statement.
The agreed statement substantially establishes that, on August 24, 1967, as authorized and sponsored by the New York State Drill Team Captains’ Association, and hosted by the defendant Fuller Road Fire Department (Fuller), a competitive fire drill was held at Colonie, New York; that such drill included, among its events, a competition utilizing a firemanic arch owned by the defendant Hicksville Fire Department (Hicksville) and leased for the drill to defendant Fuller for $150 pursuant to a written agreement.
The firemanic arch had been owned by Hicksville for some 13 years prior to the date of the accident, had been purchased out of Hicksville’s funds, and was maintained solely at the expense of Hicksville. The defendant, Hicksville Fire District, exercised no control or authority with respect to the rental, erection, or use of the arch. Rental funds obtained from leasing the arch went into Hicksville’s funds and not into the funds of the Hicksville Fire District, and were used to repair and maintain the firemanic arch, to pay for its erection when required, for the replacement and maintenance of a grandstand, and for the purchase and maintenance of storage and hauling trailers.
On the date of the accident, the erection of the arch was supervised by two members of Hicksville who were paid a total of $50 for their services from the funds realized by the rental. Members of various fire departments of the State assisted in the arch erection. The plaintiff, a member of the Málveme Fire Department and a member of the Drill Team Captains’ Association, who was chief judge of the “ drill”, was injured when the arch collapsed while he was up on it during the drill. He has received benefits under the Volunteer Firemen’s Benefit Law from the Málveme Fire Department.
The question for determination is whether the plaintiff is restricted to the benefits conferred by the Volunteer Firemen’s Benefit Law (VFBL) or may he maintain this cause as a “ third-party ” action.
A reading of the VFBL impels the conclusion that it was the intent of the Legislature in enacting this statute to follow the purport and objectives of the Workmen’s Compensation Law (WCL)r 'So states the memorandum of the Joint Legislative Committee on Fire Laws (McKinney’s Cons. Laws of N. Y., Book 63B, p. 7) and indeed, the statute itself (VFBL, § 20) makes the consistent provisions of section 29 of the WCL applicable to the VFBL.
*525 Addressing ourselves to the liability asserted against the defendant Hicksville Fire District, it can be said at the outset that the record is barren of any factual basis for predicating any responsibility on this defendant. It neither owned, managed, maintained, nor participated in the use of the equipment whose breakdown caused or contributed to the accident. Nor has it been shown to have participated in any way in the function which gave rise to the occurrence of the collapse of the firemanic arch. Absent any evidentiary basis to link the Fire District with the factual pattern disclosed by the agreed statement and the testimony, no foundation exists for imposing liability on this defendant insofar as such defendant is involved in the affirmative defense under consideration.
We pass then to the consideration of the affirmative defense as to the defendants Fuller Eoad Fire Department (Fuller) and Hicksville Fire Department (Hicksville).
In the opinion of this court, the “ drill ”, in the totality of the circumstances presented by the agreed statement of facts as amplified by the testimony, indicates a common endeavor. All the units participating in the drill were joint participants, and the members thereof were legally entitled to the benefits conferred by the VFBL. The statute (General Municipal Law, § 209) provides in part:
“ § 209. Outside service by local fire departments and companies.— 1. The fire department of any * # * fire district * * * in any town * * * may engage and participate in fire training programs in territory outside the area regularly served and protected by such fire department or fire companies. While in the performance of their duties under this subdivision, the members of such department and companies shall have the same immunities and privileges as if such duties were performed within the area regularly served and protected by such departments or companies. ”
A reading of the last sentence in the quoted statute would indicate that, if the plaintiff had been a member of Hicksville at the time of the accident, by virtue of section 19 of the VFBL he would have been limited to the exclusive remedy of benefits conferred by the VFBL.
I am unable to accept the thrust of plaintiff’s argument that belonging to another fire department conferred any greater rights upon him. This was a joint effort sanctioned in law. Engaged, as these various fire organizations were, in a common or joint training exercise, the members of the participating units were precluded by the statute (VFBL, § 19) from seeking any other remedy than that provided by said statute.
*526 The record is bare of any evidence as to the participation of said defendants beyond that of being host on the part of Fuller, and that of supplying the critical equipment and supervising the erecting of it by Hicksville. Nevertheless, this court reaches the conclusion that under the circumstances, this made Fuller and Hicksville participants in the ‘ ‘ drill ” so as to confer upon them the same degree of protection as would be afforded them if their members had injured the plaintiff while responding to a fire alarm. As was stated by the Court of Appeals in addressing itself to a factual pattern considered under the WCL, in the case of Rauch v. Jones (4 N Y 2d 592, at p. 596): “ The unmistakable intention of the Legislature to make only one remedy available to an employee injured in the course of his employment by a fellow employee is manifested by the use of the emphatic language ‘ exclusive remedy V The statute, having deprived the injured employee of a right to maintain an action against a negligent coemployee, bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided. (See Naso v. Lafata, 5 A D 2d 786, 4 N Y 2d 585 decided herewith.) ”
I cannot accept the plaintiff’s contention that the participation of Fuller and Hicksville was strictly a commercial venture, unconnected to any statutory or governmental authority.
Section 5 (subd. 1, par. i) of the VFBL reads in part as follows: “The duties and activities in relation to which benefits shall be paid and provided pursuant to this chapter are * * * i. While, within the state, any adjoining state or in Canada and pursuant to orders or authorization, practicing for, or participating as a contestant or an official in, any competitive tournament, contest or public exhibition conducted for firemen which is intended to promote the efficiency of the fire department, fire company or any unit thereof, including necessary travel directly connected therewith other than travel to and returning from such practice. The actual rendition of fire or other emergency service shall not be deemed ‘ practicing ’ within the meaning of this paragraph.”
Section 5 (subd. 2, par. b) of the VFBL reads in part as follows : ‘ ‘ Benefits shall not be paid and provided pursuant to this chapter in the following instances: * * * b. Practice for and participation in any recreational, social, or fund raising activity other than a fund raising activity for which coverage is provided under paragraph m of subdivision one of this section.”
A fund raising activity is defined in section 3 (subd. 15) of the VFBL as follows: “15. ‘ Fund raising activity ’ means a fund *527 raising activity described in subdivision one of section two hundred four-a of the general municipal law, except that for the purposes of paragraph m of subdivision one of section five of this chapter it shall not include competitive events in which volunteer firemen are competitors, such as baseball, basketball, football, bowling, tugs of war, water ball fights, donkey baseball, boxing, wrestling, contests between bands or drum corps, or other competitive events in which volunteer firemen are competitors and which involve physical exertion on the part of the competitors. Such term ‘ fund raising activity ’ shall not include drills, parades, inspections, reviews, competitive tournaments, contests or public exhibitions, described in paragraphs e and i of subdivision one of section five of this chapter, even though prizes are awarded at such events.” (Emphasis supplied.)
In applying the subject facts to the quoted sections of the statutes, I find that the “drill” which provided the scene of the unfortunate accident to plaintiff was not a fund raising activity for which benefits are proscribed by the provision of section 5 (subd. 2, par. b). The rental factor does not convert the drill into a fund raising activity. Not every fire department owned a firemanic arch. This particular piece of apparatus is a scaffold made of metal pipe whose parts fit and lock into each other. To assemble this equipment required the services of two men who were knowledgeable and expert in such work to supervise same. Additionally, parts of the apparatus periodically wore out or were lost and required replacement. It could not be reasonably expected that the funds necessary for such purpose be borne solely by Hicksville. The fact that such funds were provided by the user, a fellow fire department, did not convert the ‘ ‘ drill ’ ’ into a commercial enterprise. This is especially so when one considers that a nominal fee of $150 was imposed to transport the apparatus from Hicksville to Colonie, N. Y., and return, including supervision of erection and dismantlement.
No evidence has been submitted to indicate that the drill as such was designed or intended to raise funds. It was and is a time-honored training aid in securing improvement by competition in the skill of fire fighting under some of the recurrent conditions encountered in such work (Rosenberger v. State of New York, 46 Misc 2d 194, 198).
I do find that the events which involved the plaintiff, culminating in his injury of August 24, 1967, come within the ambit of section 5 (subd. 1, par. i) of the Volunteer Firemen’s Benefit Law, and that the plaintiff was injured while acting under gov *528 ernmental or statutory authority in furtherance of his duties or activities as a volunteer fireman. It, therefore, follows that the exclusionary provisions of said statute bar the maintenance of this action since the plaintiff is relegated to the benefits conferred by the Volunteer Firemen’s Benefit Law for the injuries received on August 24, 1967 (Gresis v. Garth Manor Corp., 20 A D 2d 726 ; Holland v. Baker, 61 Misc 2d 201, 204).
Accordingly, the affirmative defense under consideration here is sustained and constitutes a complete defense to the maintenance of this action.